NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 4, 2009[*]
Decided February 5, 2009

**Before**

JOHN L. COFFEY, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

No. 08-2198

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 99 CR 269 |
| JOHN P. MACCHIONE, *Defendant.* | Elaine E. Bucklo, *Judge.* |
| Appeal of: | |
| JOANNE MACCHIONE, *Interested Person.* | |

### O R D E R

Joanne Macchione's husband, John Macchione, was found guilty of mail fraud and tax evasion and was ordered to pay one million dollars in restitution. In trying to discover his assets to satisfy the judgment, the government sought an order compelling Dolores

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2).

Veninga, the Macchiones' tenant, to turn her rental payments over to the government. Joanne appeared in the district court to object, asserting that she, not John, owned the property and was entitled to the rental receipts. But the court entered the turnover order, requiring Veninga to remit to the government the full amount of the rent and denied Joanne's motion to reconsider. We conclude that the court abused its discretion in ordering Veninga to turn over the entire amount because only half of the net rental income (i.e., the rental payments less the cost of maintaining the house) is John's property—the other half belongs to Joanne and cannot be used to satisfy the judgment against John.

John, who was convicted in 2001 and released from prison in December 2003, owns a rental house with Joanne in Bartlett, Illinois. The house was deeded to the couple as joint tenants in 1986, and was leased to Veninga in September 2007. John executed the lease, and Veninga paid the rent to him for the first two months of the lease. Then in November 2007 the government served Veninga with a citation to discover assets. Based on the information that Veninga provided, the government filed in the district court a motion for a turnover order asserting that John owned the property and requesting the court to direct Veninga to pay the rent directly to the clerk of the court. When Veninga received the citation, she began holding her rent payments in escrow, awaiting the outcome of the proceedings.

John responded by asserting that Joanne "owns the property jointly" with him and requesting that the district court deny the government's motion. Joanne moved to intervene and contended that she, not John, was entitled to the rent. The government opposed her intervention, however, on the ground that Joanne had refused to comply with document requests and to appear for a deposition in a separate citation proceeding the government had commenced against her to discover other of John's assets. The district court said it would allow Joanne to intervene only if she appeared for her deposition by a certain date. The court reasoned that Joanne "could not prove her entitlement to the rents without the government having the opportunity to question her." Joanne did not appear for the deposition, and the district court entered the turnover order, directing Veninga to pay rent to the clerk of court.

The next week Joanne asked the district court to reconsider the turnover order. The court held a hearing at which Joanne pointed out that the deed, which she had previously provided to the government, established that she owned the property in joint tenancy with John. The government's attorney agreed that the "property is owned between the two of them," but argued that the rental payments belonged to John because he negotiated the lease and deposited the rental payments. The district court denied the motion to reconsider.

Joanne's primary argument here is that the house belongs to her, that she is entitled to the rental receipts, and that the district court improperly concluded that the rental payments belonged to John and could be used to satisfy the restitution order. We review the entry of the turnover order for abuse of discretion. *See Divane v. Krull Elec. Co.*, 194 F.3d 845, 848 (7th Cir. 1999). But first we must address a preliminary matter raised by the government.

The government acknowledges, as it must, that it was unnecessary for Joanne to obtain the district court's approval to intervene because she was entitled to appear and contest the turnover motion as a matter of right. The government may enforce a restitution order by any means available under federal or state law. *See* 18 U.S.C. §§ 3613(a), (f); 3664(m)(1)(A); *United States v. Kollintzas*, 501 F.3d 796, 800-01 (7th Cir. 2007). In this case the government chose to go after John's assets using the "citation" procedures under Illinois law. *See* 735 ILCS 5/2-1402; Ill. Sup. Ct. R. 277; *see also Soc'y of Lloyd's v. Ashenden*, 233 F.3d 473, 475-76 (7th Cir. 2000). These procedures allow a judgment creditor to discover non-exempt assets held by the debtor or third parties and to order those assets turned over to the creditor to satisfy the judgment. 735 ILCS 5/2-1402(a), (b); Ill. Sup. Ct. R. 277(a), (b); *see In re Farm Credit Bank*, 18 F.3d 413, 416 (7th Cir. 1994); *City of Chi. v. Air Auto Leasing Co.*, 697 N.E.2d 788, 791 (Ill. App. Ct. 1998). But the state procedures also require the court to allow any party who asserts an interest in the property to "appear and maintain his or her right" to the property. 735 ILCS 5/2-1402(g). Joanne claims a right to the rental payments the government sought, and thus she was entitled to appear without filing a motion to intervene. *See Kollintzas*, 501 F.3d at 801 (concluding that in supplementary proceeding to discover assets under the Fair Debt Collection Practices Act, party claiming interest in targeted property may participate without formally intervening); *In re Farm Credit Bank*, 18 F.3d at 417 (noting policy of "allowing third parties who have an interest in the property at issue in a supplemental proceeding an opportunity to be heard").

The government argues, however, that Joanne essentially waived any objection to its turnover demand by refusing to appear for her deposition as directed by the district court. We disagree. The district court did not refuse to entertain Joanne's claim that the rental receipts rightfully belong to her. Rather, the court concluded that, in the face of the evidence put forward by the government that John had executed the lease agreement and received and deposited Veninga's checks, Joanne could not possibly support her contention that she was entitled to the rental payments without providing further evidence. And while the court implied that Joanne's refusal to be deposed had made providing that evidence impossible, the court nevertheless evaluated her motion for reconsideration and allowed her to appear to argue it, which undermines the government's suggestion that the court deemed her arguments waived. More importantly, we fail to see the connection between Joanne's recalcitrance in a separate citation proceeding and her opposition to the turnover order

directed against Veninga.  As the government acknowledges in its brief, each supplemental proceeding is akin to a separate lawsuit, *see Jones-El v. Berge*, 374 F.3d 541, 543 (7th Cir. 2004); *ACORN v. Ill. State Bd. of Elections*, 75 F.3d 304, 306 (7th Cir. 1996); *Resolution Trust Corp. v. Ruggiero*, 994 F.2d 1221, 1224-25 (7th Cir. 1993), and the government has never explained what relevant information it sought to learn about the rental payments that was not already included in the record.  Joanne supplied the deed to the house, and Veninga provided a  statement and other documentary evidence concerning the lease.  We do not know how any additional information could have been helpful.  *See Mommaerts v. Hartford Life & Accident Ins. Co.*, 472 F.3d 967, 968 (7th Cir. 2007) (explaining that "it would make little sense to enter a default after a case has been decided on the merits" when there was no prejudice).

We now turn to the question of who gets the rental receipts.  Both Joanne and the government assert full ownership of the payments, but each is only half correct.  The deed evinces that Joanne and John own the property as joint tenants.  Their joint tenancy was formed in 1986—long before John's 1999 indictment—and there is no hint that the conveyance was fraudulent or structured to avoid any obligations.  Indeed, the government acknowledged in the district court and in its brief on appeal that the couple owns the property in joint tenancy.  State law tells us what rights each joint tenant has to the rental payments.  *See Drye v. United States*, 528 U.S. 49, 58 (1999); *Kollintzas*, 501 F.3d at 802.  The government argues that, in Illinois, one joint tenant acting alone can lease the entire property.  *See Nat'l Gas & Oil v. Rizer*, 155 N.E.2d 848, 848-89 (Ill. App. Ct. 1959).  This is true as far as it goes, but it does not follow, as the government contends, that the joint tenant who signs the lease is entitled to the full amount of the rental receipts.  To the contrary, all joint tenants enjoy all of the benefits of the lease, even if they did not sign it.  *See Booth v. Cebula*, 166 N.E.2d 618, 621 (Ill. App. Ct. 1960).  The right to receive rent is, of course, one of those benefits, and each joint tenant is entitled to an equal share of the proceeds.  *See Riechmann v. Riechmann*, 283 N.E.2d 734, 736 (Ill. App. Ct. 1972); *see also United States v. Davenport*, 106 F.3d 1333, 1336, 1337 n.5, 1338 (7th Cir. 1997); *Capogreco v. Capogreco*, 378 N.E.2d 279, 281 (Ill. App. Ct. 1978) (noting that each of two joint tenants "had a one-half interest in the land acquired during the marriage"); *accord United States v. Craft*, 535 U.S. 274, 280 (2002) (noting common-law right of joint tenants to "enjoy a share of the property's income").  On the flip side, joint tenants are responsible for their share of the costs to maintain the property (e.g., mortgage payments, property taxes, and repairs).  *See Moniuszko v. Moniuszko*, 606 N.E.2d 468, 474 (Ill. App. Ct. 1992).  There is no evidence in the record that the government is entitled to anything other than John's one-half share of the rental payments less expenses; thus, it must split the proceeds and costs with Joanne.  *See Davenport*, 106 F.3d at 1336, 1337 n.5 (noting that husband's interest in property held in joint tenancy with wife subject to attachment of a federal lien, but that wife was entitled to receive proceeds equal to her interest in the property).  The district court, therefore, abused

its discretion in ordering Veninga to remit the entire amount of the rental payments to satisfy the restitution order.  *See Divane*, 194 F.3d at 848 (noting that it is an abuse of discretion to base a decision on "an erroneous conclusion of law").  On remand, the district court should establish a procedure to determine the net income from the rental payments and transfer half to the government and the other half to Joanne.

VACATED and REMANDED.